UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| ATHENA BACHTEL,              ) | |
|                              ) | |
|     Plaintiff,               ) | |
|                              ) | |
|     vs.                      ) | Case No. 2:11-CV-00069 (JCH) |
|                              ) | |
| TASER INTERNATIONAL, INC.,   ) | |
|                              ) | |
|     Defendant.               ) | |

**MEMORANDUM AND ORDER**

Plaintiff Athena Bachtel ("Plaintiff") brought the instant action pursuant to Missouri tort law on behalf of herself and her deceased son, Stanley Harlan, against Defendant TASER International, Inc. ("TASER"). Plaintiff alleges that a TASER-manufactured Electronic Control Device was a substantial contributing factor in her son's death and that TASER either is strictly liable or was negligent with regard to the design of the product as well as the warnings accompanying it—that the

product was defectively designed by TASER and that TASER failed to provide adequate warnings of the danger the product posed.  Discovery is complete, and the matter is set for trial.  TASER moves for summary judgment as to the claims asserted against it.  For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

### A. Factual Background

#### 1. August 28, 2008

At 12:30 a.m. on August 28, 2008, Stanley Harlan's ("Harlan") vehicle was pulled over by Officer Gary Breyfogle ("Breyfogle") of the Moberly Police Department ("MPD") in Moberly, Missouri.  (Breyfogle Dep. 30:21-31:3.)  When Harlan was pulled over, he exited his vehicle and began to walk away.  (*Id.* at 92:12-14.)  Officer Breyfogle believed Harlan was intoxicated.  He asked Harlan to stay in his vehicle, but Harlan did not comply with this request.  (*Id*. at 94:14-95:15; 95:7; 182:19-25.)  MPD Officers Jeremy Baird ("Baird") and Jared Dotson ("Dotson") arrived at the scene to assist Officer Breyfogle.  (*Id*. at 26:7-9.)  A struggle between Harlan and the officers ensued.  (*Id*. at 7:11-22; 28:18-22; 157:1-25.)  Although Officer Breyfogle had cuffed Harlan's left hand, Harlan resisted restraint and moved off the street, beyond a sidewalk adjacent to it.  (Dotson Dep. 86:16-19; 166:21-167:1.)

MPD Sergeant Carmen Newbrough ("Newbrough"), who had also arrived at the scene, directed Officer Baird to deploy his TASER X26 Electronic Control Device ("ECD"), at which point Officer Baird disengaged from the struggle with Harlan, drew his ECD, pointed his ECD at Harlan's chest, and deployed his ECD in "probe" mode.  (Dotson Dep. 171:6-12.)  Officer Baird discharged his ECD three times, for 21 seconds, 7 seconds, and lastly 3 seconds.  (Compl. ¶ 13.)  Harlan fell to the ground.  MPD officers began kicking Harlan.  They dragged him to the street, eventually

propping him up in a slouched, sitting position.  (First Amended Complaint in *Bachtel, et al. v. City of Moberly, et al.*, No. 2:08-cv-00049 (E.D. Mo.) filed on December 1, 2008 ("Moberly Compl.") ¶¶ 21-22; Breyfogle Dep. 49:19-25.)   Harlan appeared to have lost consciousness and stopped breathing.  (Moberly Compl. ¶ 23.)  Harlan was brought to the Moberly Regional Detention Center and pronounced dead at 2:12 a.m.  (Dotson Dep. 112:7-11; Breyfogle Dep. 161:6-8; Moberly Compl. ¶ 23.)

### 2. The TASER X26 Electronic Control Device

#### a. Generally

TASER ECDs have been on the market since 1994 and are used by law enforcement agencies across the United States.  As of November 2012, ECDs were used by more than 16,880 law enforcement and military agencies in over 100 countries, and there had been an estimated 3.1 million humans exposed to ECDs.  (Patrick Smith Decl. at ¶ 50.)  There have been more than 1.7 million uses of ECDs by law enforcement officers in the field, and more than 1.35 million training and other volunteer exposures.  (*Id*. at ¶¶ 8-9.)  The X26 ECD model, at issue in this case, was introduced in 2003.

The X26 ECD is applied primarily in two ways:  (1) "probe-deployment" mode, where two small probes fire via compressed nitrogen, with electrical impulses transmitting into the target through thin insulated trailing wires; and (2) "drive-stun" mode, in which the ECD is physically pressed against the subject.  (*Id*. at ¶ 16.)  The output voltage for the X26 ECD upon entering the body is between 1400 and 2520 volts, with a mean voltage per pulse of 580.81.  (*Id*. at ¶ 22.)  Data download capabilities record the date, time, and duration for each X26 ECD discharge.  (*Id*. at ¶ 23.)

The X26 ECD, when sold, is accompanied by a product manual containing user instructions for operating the ECD, as well as weapon safety and warning guidelines.  (*Id*. at ¶ 37.)  Since 1998,

TASER has maintained a certified instructor-training program, in which instructors—typically from law enforcement or military agencies—are certified after completion of an instructor course. In other words, TASER trains trainers, rather than end users. (*Id*. at ¶¶ 28-29.) Because trainer certifications are valid for only two years, trainers must complete an additional course in order to receive a subsequent two-year certification. (*Id*. at ¶ 28.) All training is conducted pursuant to TASER's current course materials, which are revised on an approximately annual basis. (*Id*. at ¶ 31.)

### b. The ECD Applied to Harlan

The X26 ECD applied to Harlan bore the serial number X00-044654 and was shipped to the MPD on June 15, 2004. (*Id*. at ¶ 46.) At the time of shipment and sale, the MPD was provided with TASER's 2004 operating manual and a Version 11 training CD, which contained product warnings and information, as well as materials concerning TASER's recommended ECD user training course. (*Id*. at ¶ 47.) This operating manual provides, *inter alia*, the following:

> While the extensive medical evidence strongly supports the TASER X26 will not cause lasting after effects or fatality, it is very important to remember that the very nature of physical confrontation involves a degree of risk that someone will get hurt or may even be killed due to unforeseen circumstances and individual susceptibilities. Accordingly, the TASER X26 should be treated as a serious weapon and should only be deployed in situations where the alternative would be to use other force measures which carry similar or higher degrees of risk. Law enforcement customers are deployment and tactical experts and will determine all deployment and tactical practices including where the TASER X26 fits in their respective use of force continuum.

TASER X26 Operating Manual at 1.  The operating manual provides an additional 18 particularized warnings spanning a range of risks.  *Id*. at 1-2.  TASER's training materials include similar language.

As recorded by the dataport of Officer Baird's X26 ECD on August 28, 2008, and as noted above, Officer Baird discharged his ECD on Harlan three times, for 21 seconds, 7 seconds, and lastly 3 seconds, subjecting Harlan to 31 seconds of electrical current.  (Compl. ¶ 13.)

### 3. Autopsy Report

An autopsy of Harlan was conducted on the date of the incident by Carl Christopher Stacy, M.D. ("Stacy"), of the Boone / Callaway County Medical Examiner's Office.  Stacy concluded: "[T]he cause of death of Stanley J. Harlan is cardiopulmonary arrest shortly after the use of physical restraint and electro-muscular disruption technology (EMDT) device.  The mechanism is most likely arrhythmia due to epinephrine surge and respiratory issues related to struggle.  A histological conduct system abnormality may have contributed to the death." Stacy Autopsy Report at 1.

## B.  Procedural Background

Plaintiff filed the instant complaint against TASER in the Circuit Court of Randolph County, Missouri on August 19, 2011.[1]  TASER removed the case to this Court on September 28, 2011. (Doc. No. 1.)  On November 15, 2012, TASER filed the instant motion for summary judgment as to all claims asserted against it.  (Doc. No. 57.)  The matter is fully briefed and ready for disposition.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 202 (1986).  Material facts are

---

[1] On December 1, 2008, Plaintiff, on behalf of her grandson (decedent's son) B.H., along with decedent's father Darrell Harlan, instituted an action in this District pursuant to 42 U.S.C. § 1983 against the City of Moberly, Jeremy Baird, and Carmen Newbrough, captioned *Bachtel, et al. v. City of Moberly, Missouri, et al.*, No. 2:08-cv-0049 (E.D. Mo.).  That action settled in June 2009.

those that might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *Id*.

The moving party bears the initial burden of informing the Court of the basis for its motion and of identifying those portions of the pleadings, depositions, admissions, or affidavits demonstrating the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "Mere allegations unsupported by specific facts or evidence beyond the nonmoving party's own conclusions are insufficient to withstand a motion for summary judgment." *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 906 (8th Cir. 2007). Further, the Court is " not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Gilbert v. Des Moines Area Cmty. College*, 495 F.3d 906, 915 (8th Cir. 2007) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (per curiam)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue for trial. *Id*. at 249, 106 S.Ct. 2505.

The parties agree that Missouri law governs this diversity action.

### III. DISCUSSION

Plaintiff asserts claims that TASER is liable under both strict liability and negligence theories because (1) TASER's X26 ECD was defectively designed and (2) TASER failed to warn Plaintiff that prolonged or repeated chest application of the X26 ECD could lead to ventricular fibrillation-induced cardiac arrest. Plaintiff's claims are discussed in turn directly below.

**A. Strict Liability (Design Defect)**

In order to prevail on a strict liability claim premised on an alleged design defect, a plaintiff must establish that (1) the defendant sold the product in question in the course of its business; (2) the product was sold in a defective condition, unreasonably dangerous when used in a reasonably anticipated manner; (3) the product was used in a reasonably anticipated manner; and (4) the plaintiff was damaged as a direct result of a defective condition that existed when the product was sold. *See Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 671 (Mo. App. E.D. 2007) (citing *Lay v. P & Health Care, Inc.*, 37 S.W.3d 310, 325 (Mo. App. W.D. 2000), *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969)).

Missouri courts have held consistently that a manufacturer's liability is predicated on (1) "the dangerous nature of the product at the time it leaves the hands of the manufacturer" (*Boyer v. Bandag, Inc.*, 943 S.W.2d 760, 763 (Mo. App. E.D. 1997) (citing cases)) and (2) the "character of the product ... not the character of the defendant's conduct" (*Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo. 1986) (en banc) (citing *Blevins v. Cushman Motors*, 551 S.W.2d 602, 608 (Mo. 1977) (en banc); Restatement (Second) of Torts § 402A (1965)).

The crux of Plaintiff's design defect claim is that TASER's X26 ECD is "unreasonably dangerous" because "the X26 was marketed and sold by TASER as a non-lethal weapon, yet it can kill." Plaintiff's Memorandum in Opposition to Defendant TASER International, Inc.'s Motion for Summary Judgment ("Plainttif's Br.") at 21. In opposition to TASER's motion for summary judgment

on this claim, Plaintiff relies upon only (1) certain allegations in her Complaint and (2) a 2008 Amnesty International report which "identified over 500 deaths in the United States associated with TASER products from June 2001 through 2011." *Id*. at 21 n. 24 (citing *"Less than Lethal"? The Use of Stun Weapons in U.S. Law Enforcement*, Amnesty International (2008)).

As an initial matter, these items of purported support for Plaintiff's design defect claim do not constitute such evidence as required by law to try this case.

Insofar as Plaintiff rests on allegations in her Complaint at this juncture of the litigation, it is well-settled that such allegations, standing alone, are insufficient to survive a motion for summary judgment. See *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (under Fed.R.Civ.P. 56 plaintiffs cannot "get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations"); *BPI Energy Holdings, Inc. v. IEC (Montgomery) LLC*, 664 F.3d 131, 135 (7th Cir. 2011) (Posner, J.) (citing cases) (avoiding grant of summary judgment "requires evidence, and allegations are not evidence"). "[S]ignificant probative evidence tending to support the complaint" is required in order to raise an issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (quoting *Cities Serv.*, 391 U.S. at 290. 88 S.Ct. 1575).

The Amnesty International report on which Plaintiff relies is, similarly, insufficient to withstand TASER's motion. "[O]nly evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment." *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 611 n. 4 (8th Cir. 2007) (citing *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003)). Federal courts have held repeatedly that, at the summary judgment stage, materials akin to the Amnesty International report are inadmissible hearsay. For instance, "[n]ewspaper articles … are not proper summary judgment evidence to prove the truth of the facts that they report because they

are inadmissible hearsay." *James v. Tex. Collin County*, 535 F.3d 365, 374 (5th Cir. 2008); *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742-47 (7th Cir. 1997) (Posner, J.) (discussing default rule that "letters, articles, and other unattested hearsay documents" are inadmissible in opposition to motion for summary judgment and finding that "a district judge would be abusing his discretion to admit" an article from the *Chicago Tribune* as proof of its contents on summary judgment). Indeed, at least one federal court has concluded that an Amnesty International report regarding police use of "tasers" was inadmissible hearsay at the summary judgment stage. *See Parker v. City of South Portland*, 2007 WL 1468658, at *3 n.2 (D. Me. May 18, 2007).

Plaintiff plainly proffers the Amnesty International report to prove the truth of its contents. The report is therefore hearsay. Plaintiff identifies no exception to the hearsay rule that would render the report admissible, however, and the Court finds no exception applicable.

Accordingly, Plaintiff lacks admissible evidence to raise a genuine issue of material fact on her design defect claim, and TASER's motion as to this claim must be granted.

Furthermore, Plaintiff points to no witness testimony—lay or expert—in support of her design defect claim. Under Missouri law, however, expert testimony is required to support a design defect claim involving accidents where, as here, (1) a complex product and (2) multiple possible causes are in issue. *See Menz v. New Holland N. Am., Inc.*, 460 F. Supp. 2d 1058, 1064 (E.D. Mo. 2006), *aff'd*, 507 F.3d 1107 (8th Cir. 2007) (citing *Bryant v. Laiko Intern. Co., Inc.*, 2006 WL 2788520 at *10 (E.D. Mo. Sept. 26, 2006); *Shaffer v. Amada America, Inc.*, 335 F. Supp. 2d 992, 998 (E.D. Mo. 2003)). The Court has ruled previously that Plaintiff's sole expert witness, Douglas Zipes, M.D., "is unqualified to testify as an expert in this case in the fields of warnings, testing, and *design* under Rule 702." (Doc. No. 66 at 4 (emphasis added).) Thus Plaintiff is not entitled to submit her design defect claim to a jury on this separate and independent basis.

**B.  Strict Liability (Failure to Warn)**

Plaintiff's failure to warn claim requires a showing that (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of sale when put to a reasonably anticipated use without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product *being sold* without an adequate warning. *See Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. 2011) (en banc) (citing *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. 1994) (en banc)).  The last element, causation, contains two independent requirements:  (1) proof of a proximate causal link between decedent's injury and the product allegedly lacking or having an inadequate warning; and (2) proof that a warning would have altered the behavior of those involved in the accident.  *See Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 89 (Mo. App. E.D. 1999) (citing *Tune*, 883 S.W.2d at 14).  Under Missouri law, "a manufacturer can be held strictly liable for failure to warn of the dangers of a product even if there is no defect in its design."  *Belec v. Hayssen Mfg. Co.*, 105 F.3d 406, 408 (8th Cir. 1997) (citing *Sutherland v. Elpower Corp.*, 923 F.2d 1285, 1288 (8th Cir. 1991); *Nesselrode*, 707 S.W.2d at 382).

Plaintiff's failure to warn claim falls short for two reasons.  First, Plaintiff cannot show that TASER failed to provide an adequate warning in June 2004, when the X26 ECD deployed on Harlan by Officer Baird was sold to the MPD.  Plaintiff contends there is evidence "sufficient to persuade a jury that TASER knew, or could reasonably have known of the risk [of ventricular fibrillation], well before August 2008, when Stanley Harlan died."  Plaintiff's Br. at 10.  Ultimately, Plaintiff seeks to impute knowledge of research—not published prior to June 2004—concerning ventricular fibrillation to TASER.  These efforts, however, overlook the fact that there is no post-sale duty to warn under

Missouri law—the operative reference point is the time of sale. *See Moore*, 332 S.W.3d at 756; *see also, e.g.*, *Jaurequi v. John Deere Co.*, 971 F. Supp. 416, 427-30 (E.D. Mo. 1997), *aff'd*, 173 F.3d 1076 (8th Cir. 1999) (examining adequacy of product warnings in light of standards and regulations in effect in 1974 when product was sold).

This rule follows from the Missouri Supreme Court's adoption of Section 402A of the Restatement (Second) of Torts § 402A as the yardstick for strict liability claims. *See Pree v. Brunswick Corp.*, 983 F.2d 863, 865 (8th Cir. 1993); *Keener*, 445 S.W.2d at 364. Applying the Second Restatement standard, courts look to "whether the defendant failed to warn of particular risks that were known or knowable in light of the generally recognized and prevailing scientific and technical knowledge *available at the time of manufacture and distribution*." *Oja v. Howmedica, Inc.*, 111 F.3d 782, 791 (10th Cir. 1997) (quoting *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1174 (Colo. 1993) (en banc)) (emphasis added); *see also, e.g.*, *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1347 (M.D. Fla. 2003) (same). As the California Supreme Court explained this principle in *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549 (Cal. 1991):

> [W]e have refused to extend strict liability to the failure to warn of risks that were unknowable at the time of distribution. ... [I]f a manufacturer could not count on limiting its liability to risks that were known or knowable at the time of manufacture or distribution, it would be discouraged from developing new and improved products for fear that later significant advances in scientific knowledge would increase its liability.

*Id.* at 556.

Turning, then, to the time of sale as the appropriate chronological marker under Missouri law, Plaintiff offers up no research or other evidence generally recognized within the scientific community,

- 11 -

or known to TASER, before June 2004 plausibly linking TASER's X26 ECD to risk of ventricular fibrillation. *Cf. Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1012 (N.D. Cal. 2009), *aff'd*, 684 F.3d 941 (9th Cir. 2012) (granting TASER's motion for summary judgment on failure to warn claim after examination of plaintiff's evidence prior to date of sale concerning dangers known or knowable to TASER at time of sale). Plaintiff's evidentiary shortfall leaves no issue for the fact-finder with respect to the adequacy of warnings provided by TASER when the X26 ECD was sold to the MPD.

Second, even if Plaintiff were able to demonstrate an inadequacy in TASER's time-of-sale warnings under Missouri law, Plaintiff must further establish that a different warning(s) would have altered the behavior of those involved in the accident. *See Mothershead*, 994 S.W.2d at 89. Plaintiff cannot make this showing, however, absent expert testimony. *See Menz v. New Holland N. Am., Inc.*, 460 F. Supp. 2d 1050, 1056 (E.D. Mo. 2006), *aff'd*, 507 F.3d 1107 (8th Cir. 2007); *see also Lemmon v. Wyeth, LLC*, 2012 WL 2848161, at *8 (E.D. Mo. July 11, 2012) (citing *Bryant*, 2006 WL 2788520, at *9-10; *Davidson v. Besser Co.*, 70 F. Supp. 2d 1020, 1023 (E.D. Mo. 1999)) ("Admissible expert testimony that additional or other warnings might have altered the plaintiff's behavior is required in failure-to-warn cases."). Because the Court has ruled that Plaintiff's lone expert witness "is unqualified to testify as an expert in this case in the fields of *warnings*, testing, and design under Rule 702" (Doc. No. 66 at 4 (emphasis added)), additional independent grounds require the granting of TASER's motion as to Plaintiff's failure to warn claim.

## C. Negligence (Design Defect and Failure to Warn)

In order to prevail on a negligence claim, a plaintiff is required to show that (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant failed to perform this duty; and (3) the defendant's failure to perform this duty resulted in injury to the plaintiff. *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 800 (Mo. App. W.D. 2008) (citing *Hill v. General*

*Motors Corp.*, 637 S.W.2d 382, 384 (Mo. App. E.D. 1982)). With respect to failure to warn claims based on negligence, Missouri law requires a plaintiff to make the same showing of proximate cause as under strict liability. Thus, Plaintiff must establish (1) a proximate causal link between decedent's injury and the product purportedly lacking or having an inadequate warning; and (2) that a warning would have altered the behavior of those involved in the accident. *See id.* at 788 n. 107 (citing *Mothershead*, 994 S.W.2d at 89).

"Negligence claims have a higher threshold of proof than strict liability claims." *Jaurequi*, 971 F. Supp. at 431 (citing *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 n. 2 (8th Cir. 1996)); *see also id.* at 431-32 ("Because ... plaintiff cannot present triable strict liability claims for defective design or for failure to warn, the Court finds similarly that plaintiff has not presented issues of material fact necessary to preclude summary judgment on his claims of negligence against defendants."); *Hansen v. Isuzu Motors Ltd.*, 289 Fed. Appx. 621, 626 (4th Cir. 2008) (per curiam) ("The burden of proof for strict liability is lower than the burden of proof under negligence. Thus if plaintiff could not meet the lower standard, then it is clearly unreasonable to believe that he could have met the burden for his negligence claim.").[2]

Hence, the Court's finding that Plaintiff cannot proceed to trial on her strict liability claims for defective design and failure to warn necessitates the conclusion that, under a negligence theory, Plaintiff likewise cannot avoid summary judgment at to these claims.

---

[2] Under Missouri law, the threshold for negligence claims is higher than that for strict liability claims because negligence claims carry an additional element—whether the defendant exercised reasonable care. *See Nesselrode*, 707 S.W.2d at 375 ("under a theory of strict tort liability, the focal point of the litigational process is the condition or character of the product and not the character of the defendant's conduct—thereby *excising* the concept of reasonable care, the limits test of liability in negligence law, from Missouri's rule of strict tort liability") (emphasis added); *Blevins*, 551 S.W.2d at 608 (difference between negligence and strict liability claims is that "article can have a degree of dangerousness which the law of strict liability will not tolerate even though the actions of the designer were entirely reasonable in view of what he knew at the time he planned and sold the manufactured article") (quotations omitted).

Moreover, Plaintiff's negligence claims cannot survive TASER's motion for summary judgment because she does not—although she must—offer up an expert qualified to testify regarding (1) the standard of technical care to which TASER allegedly should have adhered when designing the X26 ECD; and (2) the adequacy of TASER's warnings with regarding to the X26 ECD. *See, e.g.*, *Fisher v. Wilkinson*, 382 S.W.2d 627, 632 (Mo. 1964) ("If laymen who sit on juries are not to be guided on issues requiring peculiar and thorough special training in a science or art beyond the experience and knowledge common to mankind by witnesses possessing the necessary testimonial qualifications, juries will be cast into a river of doubt and must establish an arbitrary standard of their own founded upon conjecture and surmise in their effort to reach certain and sure ground."); *Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc.*, 392 F.2d 472, 478 (8th Cir. 1968) ("the general rule requiring expert testimony to establish a reasonable standard of professional care is necessary when issues are presented that are beyond the ordinary competency of laymen jurors"); *Lemmon*, 2012 WL 2848161, at *8 ("Admissible expert testimony that additional or other warnings might have altered the plaintiff's behavior is required in failure-to-warn cases."). Accordingly, TASER's motion as to Plaintiff's negligence claims must be granted.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that TASER International, Inc.'s Motion for Summary Judgment (Doc. No. 57) is **GRANTED** and Plaintiff's claims against Defendant TASER International, Inc. are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 28th day of January, 2013.

- 15 -

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE